UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE CAVNER and BETH CAVNER,<br><br>Plaintiffs,<br><br>v.<br><br>AIRBORNE SYSTEMS NORTH AMERICA OF CA, INC. et al.,<br><br>Defendants. | Case No.: 15cv2656 LAB (BGS)<br><br>**ORDER**<br>**(1) DENYING DEFENDANT'S MOTION FOR RELIEF ARISING FROM VIOLATION OF PROTECTIVE ORDER**<br>**(2) GRANTING APRIL 11, 2017 STIPULATION REGARDING ADDITIONAL DISCOVERY DISPUTE**<br><br>[ECF Nos. 78, 96] |

On February 6, 2017, the parties contacted the Court regarding a possible violation of the Protective Order. Specifically, Defendant Airborne Systems North America of CA, Inc. alleges that Plaintiffs Steve and Beth Cavner violated the Protective Order by disclosing confidential documents produced by Airborne to Plaintiffs' expert, John Sherman. Airborne asserts that Mr. Sherman is a competitor based on his relationship to Parachute Laboratories, Inc. ("Parachute Labs"). The Court issued a briefing schedule. Airborne filed a Motion for Relief Arising from Violation of Protective Order and

Plaintiffs filed an Opposition. (ECF Nos. 78, 80.) As explained more fully below, the Court **DENIES** the Motion because there is not currently a sufficient connection between Mr. Sherman and Parachute Labs to consider him a competitor on that basis.

## BACKGROUND

Plaintiffs have retained Mr. Sherman as an expert in this case. Mr. Sherman is employed by Humatec, an expert consulting firm. (Decl. of John B. Sherman ("Sherman Decl.") ¶ 6.) He founded Parachute Labs in 1969, but retired from the company on November 12, 2002. (*Id.* ¶ 3.) His declaration and the President of Parachute Labs' declaration both indicate that Mr. Sherman has not worked for or received any compensation from Parachute Labs since his retirement. (*Id.*; Decl. of Nancy LaRiviere ("LaRiviere Decl.") ¶ 15.) Additionally, a computerized record from Parachute Labs and the declaration of the company's Office Manager indicate the same. (Decl. of Suzie Bass ¶ 5-6, Ex. A.)

Mr. Sherman is married to the current President of Parachute Labs, although his declaration indicates that he has not provided his wife with any documents related to this litigation nor discussed any information related to the case with her or any of Parachute Labs' employees. (Sherman Decl. ¶ 5.) She declares the same. (LaRiviere Decl. at ¶ 6.) In addition to having executed the Protective Order in this case, Mr. Sherman also indicates that he is subject to a Humatec Confidentiality Agreement under which he cannot disclose any documents or information to any third party. (Sherman Decl. at ¶ 8.) He declares that he is in compliance with both. (*Id.*)

///

Airborne has submitted the Declaration of Jean C. Berland ("Berland Decl.") and an exhibit indicating that on January 16, 2017, Parachute Labs' website indicated Mr. Sherman would be teaching a parachute rigging course on January 13-21, 2017. (Berland Decl. ¶ 7, Ex. C.) Additionally, Airborne has submitted sign in sheets from the Parachute Certification Standards Committee's meetings held on February 11, 2012 and August 24, 2012 reflecting Mr. Sherman signed in at each as affiliated with Parachute Labs and

included his email address associated with Parachute Labs. (*Id.* ¶ 9, Ex. E.)

Mr. Sherman does not dispute that he attended these meetings in 2012, but indicates he did not represent Parachute Labs nor was he compensated by Parachute Labs to attend. (Sherman Decl. ¶ 10.) Ms. LaRiviere indicates the same. (LaRiviere Decl. at ¶ 14.) Mr. Sherman explains he attended with his wife and his signing in as associated with Parachute Labs was a "force of habit, based on my decades of attending these and similar meetings while actively involved in my former company prior to my 2002 retirement." (Sherman Decl. at ¶ 10.) He indicates he ceased using his email address associated with Parachute Labs for business purposes when he retired, but continued to use it otherwise because it was the email address others had for him and he did not have another personal email address. (*Id.* ¶ 11.)

Mr. Sherman's declaration also indicates that he was not present for and did not participate in any way in the January 2017 class listed on the Parachute Labs website. (Sherman Decl. ¶ 9.) Timothy M. Patterson, Jr., present for this class, declares the same. (Decl. of Timothy Patterson, Jr. ¶ 6.) Ms. LaRiviere indicates that she personally maintains the website and the listing of Mr. Sherman was a mistake — she neglected to take his name off the website after he participated as an uncompensated speaker for a similar course years before. (LaRiviere Decl. ¶ 13.)

## DISCUSSION

## I.     Protective Order Violation

Airborne seeks sanctions against Plaintiffs for violating the February 12, 2016 Protective Order's provision prohibiting disclosure of confidential documents to competitors of the designating party. (Prot. Order ¶ 10.) There is no dispute that Airborne's confidential documents have been disclosed to Mr. Sherman. The only issue is whether Mr. Sherman is a competitor to Airborne.

Airborne argues Mr. Sherman is a competitor and seeks an order: (1) compelling Mr. Sherman to return all confidential documents; (2) disqualifying Mr. Sherman as an expert for Plaintiffs; (3) imposing civil contempt sanctions against Plaintiffs and their

counsel; (4) requiring Plaintiffs to identify or certify that their second, anonymous consulting expert is not associated with any parachute design or manufacturing company that sells parachutes to U.S. or foreign militaries.[1]

The provision of the Protective Order Airborne asserts Plaintiffs violated provides as follows:

> Discovery Materials designated as Confidential *may not be provided to competitors of the designating party*, including but not limited to in-house counsel for the designating party's competitors, their paralegals, or regularly employed office staff, but excluding local counsel for any defendant in this case. Any party that believes it is necessary to disclose Discovery Materials designated as Confidential to any competitor(s) of the designating party must obtain the approval of the designating party prior to disclosure of Discovery Material.

(Protective Order ¶ 10 (emphasis added).) Competitor is not further defined.

Airborne argues the disclosure of confidential documents to Mr. Sherman violated the Protective Order because he "continues to be involved in Parachute Laboratories, Inc., a competitor of Airborne." (Airborne's Mot. at 3.) To find a violation on this basis, the Court would have to find that Parachute Labs is a competitor to Airborne and that Mr. Sherman has a sufficient connection to Parachute Labs that he could be considered a competitor based on his affiliation with Parachute Labs. Because the Court finds there is not a sufficient connection between Mr. Sherman and Parachute Labs to make Mr. Sherman a competitor on that basis, the Court does not address whether Parachute Labs is itself a competitor to Airborne.[2]

Airborne asserts that Mr. Sherman is a competitor to Airborne through his affiliation with Parachute Labs because he founded Parachute Labs, is married to its

---

[1] Airborne's demand for this disclosure, like the other relief demanded, is based on Plaintiffs having violated the Protective Order on this issue. Because the Court finds no violation as to Mr. Sherman, this relief is also denied.

[2] Plaintiffs also argue that even if there were a sufficient connection between Mr. Sherman and Parachute Labs, Parachute Labs is not a competitor to Airborne.

4

President and owner, and continues to be involved in it.  The Court addresses each of Airborne's arguments, but also finds in considering the connections collectively, there is not a sufficient connection between Mr. Sherman and Parachute Labs to consider him a competitor, even assuming Parachute Labs is a competitor.

Two pieces of information Airborne relies on do not reflect on Mr. Sherman's connection to Parachute Labs *now*.  First, his founding the company in 1969 is very distant in time.  Although it does reflect a lengthy history with the company, it does not show that he is affiliated with the company now, particularly given the evidence he retired in 2002 and has received no compensation from Parachute Labs since.  Second, his signing in for two Parachute Certification Standards Committee meetings in 2012 was almost five years ago.  The Court acknowledges that his signing in as affiliated with Parachute Labs might undermine his claim that he had not worked for the company for almost ten years.  However, his attendance with his spouse who was affiliated with Parachute Labs might explain this and Mr. Sherman's explanation — force of habit after so many years with this company — is not an unreasonable explanation.

As to the more recent connection asserted, his being listed on a website as teaching a class in 2017, it is also not sufficient.  Mr. Sherman undisputedly did not teach or attend this class and he has received no compensation from the company for doing so or at all.  Although not necessary, given he did not teach, receive compensation, or even attend the class, the explanation that it was posted in error, only further supports the conclusion that he was not affiliated with Parachute Labs through this 2017 class.

Finally, Mr. Sherman's wife being President of Parachute Labs is not a sufficient affiliation with the company to make Mr. Sherman a competitor to Airborne, assuming Parachute Labs is a competitor to Airborne.  Neither party provides any authority that a spouse's affiliation with a company can or cannot be imputed to their spouse.[3]  And, in

---

[3] Plaintiffs did cite cases addressing the absence of a conflict in married attorneys' firms' being on opposing sides in litigation.  However, as noted above, considering the

15cv2656 LAB (BGS)

considering the circumstances presented in this case, the Court cannot find Mr. Sherman is a competitor based on his wife being the President of Parachute Labs. Practically, it would be comparable to assuming, by virtue only of their marriage, that Mr. Sherman has or will disclose information gained from Airborne's documents to his wife based solely on their marriage. This would be a particularly challenging jump to make when both have declared Mr. Sherman has not made such a disclosure and his declaration that he will not.

## II.    Additional Discovery Dispute

The parties jointly raised an additional discovery dispute on April 5, 2017. (ECF No. 93.) After being advised of the Court's assessment of the dispute and that an order regarding briefing would be forthcoming, (ECF No. 95), the parties filed a Joint Motion stipulating that Airborne had elected not to file a motion and to withdrawal of the dispute. (ECF No. 96.) Based on the foregoing, the Court **GRANTS** the parties' stipulation and considers the dispute withdrawn.

## CONCLUSION

Airborne's Motion for Relief Arising from Violation of the Protective Order is **DENIED.** The April 11, 2017 stipulation is **GRANTED**.

**IT IS SO ORDERED.**

Dated: April 28, 2017

Hon. Bernard G. Skomal
United States Magistrate Judge

---

circumstances here and the absence of any authority from Airborne identifying a *per se* rule Mr. Sherman steps into the shoes of Parachute Labs by way of his marriage, the Court need not attempt to analogize to Plaintiffs' authority.